**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JACKSON CHARLES,                                                      **Case No.:** 1:19-cv-24076

    Plaintiff,

v.

MIAMI GARDENS APARTMENTS, LLC.,
JESSICA CACERES individually and in her full capacity.
MOSHE EICHLER individually and in his full capacity.
SAM HOROWITZ individually and in his full capacity.
MARTY FOLLMAN individually and in his full capacity.

    Defendants.
_____/

**COMPLAINT**

Plaintiff, JACKSON CHARLES, through his counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants; MIAMI GARDENS APARTMENTS, LLC, JESSICA CACERES, MOSHE EICHLER, SAM HOROWITZ and MARTY FOLLMAN, and alleges as follows:

**NATURE OF THE CASE**

1. This is an action for relief from violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to hostile work environment, race discrimination, retaliation, and unlawful termination.

2. This action is to redress Defendants' unlawful employment practices against Plaintiff, including Defendants' unlawful discrimination against Plaintiff with regards to his employment on the basis of race and color, hostile work environment predicated on racial discrimination, employer retaliation as a result of Plaintiff's opposition to unlawful discrimination, and Defendants' wrongful termination of Plaintiff on the basis of Plaintiff's opposition to aforementioned unlawful practices.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and injunctive relief pursuant to 42 U.S.C. § 1981 ("Section 1981").

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under 42 U.S.C. § 1981.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PARTIES

6. Plaintiff JACKSON CHARLES ("CHARLES") is an individual man of Black Haitian-American race, who grew up in Haiti and is a resident of the State of Florida and resides in the Miami-Dade County.

7. At all times relevant to this Complaint, Plaintiff CHARLES identifies himself as Haitian-American, and speaks English with a creole accent.

8. Defendant GARDENS APARTMENTS, LLC. ("GARDENS APARTMENTS") is a for profit corporation, existing by the virtues and laws of the State of Florida.

9. At all material times, Defendant GARDENS APARTMENTS is a residential apartment business, located and operated in Miami Dade, Florida.

10. Defendant JESSICA CACERES ("CACERES") a Caucasian female, is an adult individual, and the Property Manager of GARDENS APARTMENTS.

11. At all material times, CACERES controlled many of the tangible aspects of Plaintiff's job duties, including holding the power to fire Plaintiff.

12. Defendant MOSHE EICHLER ("EICHLER") a Caucasian male, is an Owner and Manager of GARDENS APARTMENTS.

13. At all material times, EICHLER controlled many of the tangible aspects of Plaintiff's job duties, including holding the power to fire the Plaintiff.

14. Defendant SAM HOROWITZ ("HOROWITZ") a Caucasian male, is an Owner and Manager of GARDENS APARTMENTS.

15. At all material times, HOROWITZ controlled many of the tangible aspects of Plaintiff's job duties, including holding the power to fire the Plaintiff.

16. Defendant MARTY FOLLMAN ("FOLLMAN") a Caucasian male, is a senior manager of GARDENS APARTMENTS, with a supervisory role over the staff of GARDENS APARTMENTS, including CACERES.

17. At all material times, HOROWITZ controlled many of the tangible aspects of Plaintiff's job duties, including holding the power to fire the Plaintiff.

18. At all times relevant to this Complaint, GARDENS APARTMENTS meet the definition of an "employer" under all applicable state and local statutes.

## **STATEMENT OF FACTS COMMON TO ALL CLAIMS**

19. On or about August 01, 2017, Plaintiff was hired as a security guard at GARDENS APARTMENTS.

20. Plaintiff was a member of a security team that comprised of two other Haitian American security guards.

21. In or around June 2018, CACERES was hired as the property manager for Miami Gardens Apartments.

22. In or around June 2018, CACERES called Plaintiff and both Haitian-American security guards to a meeting. During the meeting CACERES asked "WHY ARE THERE ONLY HAITIANS IN THE SECURITY DEPARTMENT?" CACERES also stated that she had a "Plan B" for security at GARDENS APARTMENTS.

23. CACERES engaged in conduct intended to humiliate and degrade Plaintiff on account of his race. In or around August 2018, CACERES called Plaintiff and another Haitian-American security guard to a meeting. CACERES told Plaintiff "I DON'T WANT TO SEE YOU IN MY FACE ANYMORE, GIVE ME THE KEYS AND LEAVE. YOU CAN GO HOME AND NEVER COME BACK."

24. CACERES would routinely humiliate Plaintiff by ordering Plaintiff to come to her office, then demanding that he give her the keys to the property and leave.

25. Throughout Plaintiff's employment at GARDENS APARTMENTS, Plaintiff was subjected to degradation, humiliation and ridicule by Defendants on account of his race and national origin. By way of example, CACERES told Plaintiff "YOU SECURITY ARE SO DUMB and YOU

DON'T KNOW HOW TO READ AND WRITE. YOU HAITIANS HAVE TO GO TO SCHOOL TO LEARN HOW TO WRITE AND SPEAK ENGLISH."

26. On or about December 8, 2018, CACERES told Plaintiff "YOU SECURITY WORK FOR ME, AND I DON'T WANT YOU AT THE PROPERTY."

27. At all material times, Defendants did not make discriminatory statements, nor engage discriminatory conduct against Caucasian and non-Haitian American employees.

28. Plaintiff made several complaints about the racial discrimination and hostile work environment- to EICHLER, HORWITZ, FOLLMAN and the management team. By way of example;

   a. On or about December 9, 2018, Plaintiff drafted and sent a complaint email to the GARDENS APARTMENTS corporate office.

   b. On or about December 10, 2018, Plaintiff called GARDENS APARTMENTS corporate office and complained to EICHLER and HOROWITZ.

   c. On or about December 12, 2018, Plaintiff complained to FOLLMAN.

   d. On or about December 17, 2018, Plaintiff again complained to EICHLER and HORROWITZ.

29. The management team at GARDENS APARTMENTS, including EICHLER, HOROWITZ and FOLLMAN did not take any steps to address nor remedy Plaintiff's complaints. CACERES remained as the Property manager of GARDENS APARTMENTS, and Plaintiff's supervisor.

30. In or around the first week of January of 2019, Caceres began to retaliate against Plaintiff and the two other Haitian-American security guards for complaining about unlawful discrimination by humiliating

31. On or about January 4, 2019, CACERES called Plaintiff and both Haitian- American security guards to her office and stated, "YOU HAITIAN PEOPLE CALLED CORPORATE ON ME AND THINK IT WILL BE A GOOD IDEA FOR YOU, BUT ALL THREE OF YOU WILL BE FIRED SOON!, I TRIED TO KEEP YOU AT THE JOB BECAUSE YOUR COUNTRY HAS PROBLEMS." CACERES further angrily exclaimed; "DON'T COMPLAINT ON SOMEONE WHO IS HIGHER THAN YOU!"

32. On or about February 23, 2019, CACERES learned that a resident of the property had died in an apartment unit earlier that day. CACERES called Plaintiff and shouted "WHY DIDN'T YOU CALL ME AND TELL ME THIS? YOU FUCKING UGLY HAITIAN!" Plaintiff was humiliated, he informed CACERES that he had just come in for his shift and wasn't previously aware of the incident, and in-fact the incident had occurred earlier that morning when no security guard was on duty.

33. On or about March 8, 2019, CACERES called Plaintiff, and both Haitian-American security guards to her office. CACERES informed them that on March 31, 2019, all three Haitian-American security guards will be terminated by GARDENS APARTMENTS.

34. On or about March 11, 2019, FOLLMAN was contacted by Plaintiff and the other two Haitian-American security guards by phone. FOLLMAN informed all three security guards that they hadn't done anything wrong. In fact, he stated that they were doing a good job, but they had to let them go.

35. On or about March 14, 2019, at around 6:20 pm, CACERES called Plaintiff to a meeting. CACERES told all three Haitian-American security guards, "YOU ARE ALL BEING FIRED BECAUSE YOU CALLED CORPORATE ON ME."

36. CACERES further informed them that FOLLMAN, EICHLER and HOROWITZ were aware, and had confirmed of the decision to terminate the Haitian- American security guards.

37. On said date, CACERES concluded the meeting by mockingly stating, "NOW THAT YOU ARE FIRED WHY DON'T YOU GO CALL CORPORATE NOW TO COMPLAIN ABOUT ME."

38. Plaintiff and both Haitian- American security guards were terminated on March 31, 2019.

39. These are just some examples of the unlawful discrimination and retaliation to which the Defendants have subjected Plaintiff.

40. Defendants discriminated against Plaintiff as it related to the terms and conditions of his employment because of Plaintiff's race, and color characteristics.

41. Defendants subjected Plaintiff to a hostile work environment based on Plaintiff's race, and color characteristics.

42. Defendants retaliated against Plaintiff because he complained, reported or otherwise opposed Defendants' illegal conduct.

43. Plaintiff claims a continuous practice of discrimination and make all claims herein under the continuing violations doctrine.

44. As a result of Defendants unlawful and discriminatory actions, Plaintiff has endured humiliation resulting in severe emotional distress, severe depression, extreme anxiety, and accompanying physical ailments.

45. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

47. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant, jointly and severally.

48. Plaintiff claims alternatively (in the event Defendants claim or the Court determines) that Plaintiff is an Independent Contractor; Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

## COUNT I
## DISCRIMINATION UNDER 42 U.S. CODE § 1981
## (AGAINST ALL DEFENDANTS)

49. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

50. 42 U.S. Code § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

51. Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of Black Haitian-American race.

52. Defendants violated Section 1981 by intentionally discriminating against Plaintiffs in a serious tangible way with respect to compensation, terms, conditions or privileges of his employment.

53. Plaintiffs' race characteristics were a determinative or motivating factor in Defendants' employment actions.

54. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

55. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

56. Defendants' harassment and highly offensive conduct and statements to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

57. Defendants' conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

58. Defendants acted upon a continuing course of conduct.

59. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, a Haitian-American individual, of the equal rights afforded to him, in violation of 42 U.S.C. §1981.

60. Defendants violated Section 1981, and Plaintiff suffered numerous damages as a result.

61. Plaintiff makes its claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

62. As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits to the Plaintiff.

63. As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

64. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT II-
## § 1981 RETALIATION
## (AGAINST ALL DEFENDANTS)

65. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

66. Plaintiff, as an individual of Black Haitian-American race, was discriminated against by Defendants on account of his race, in violation of Section 1981.

67. Plaintiff engaged in protected activity by making several complaints to the Defendants and opposing Defendants' unlawful actions.

68. Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

69. There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

70. The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

71. As a result of the Defendants violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section

1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT III-
## § 1981 HOSTILE WORK ENVIRONMENT
## (AGAINST ALL DEFENDANTS)

72. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

73. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics as a Black Haitian-American man.

74. Defendants' conduct was not welcomed by Plaintiff.

75. Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

76. Plaintiff genuinely believed his work environment was hostile or abusive as a result of Defendants' conduct.

77. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

78. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

79. Defendants acted upon a continuing course of conduct.

80. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

   **WHEREFORE**, Plaintiff demands judgment against Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT IV:
## RACIAL DISCRIMINATION IN VIOLATION OF FLORIDA STATUE § 760.10
## (AGAINST ALL DEFENDANTS)

81. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

82. Florida Statute Section 760.10(1)(a) provides that:

    It is an unlawful employment practice for an employer:

    To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or

        privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

83. Plaintiff, a Black Haitian American man was subjected to disparate treatment on account of his race, including terminating his employment.

84. Defendants subjected Plaintiff to racial discrimination, hostile work environment, retaliation, and unlawful termination on account of his race.

85. Defendants violated Section 760.10 by intentionally discriminating against Plaintiff in a serious tangible way with respect to compensation, terms, conditions or privileges of his employment on account of his race.

86. Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

87. As a result of the Defendants' violations of Section 760.10, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

    **WHEREFORE**, Plaintiff demands judgment against Defendants, and pray for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the Defendants' conduct as set forth herein is in violation of Section 760.10; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues raised by this complaint.

                Respectfully submitted,

            **DEREK SMITH LAW GROUP, PLLC**

By: /s/ Walwin L Taylor
Walwin L. Taylor
Attorney ID No. 119416
701 Brickell Ave, Suite 1310
Miami, FL 33131
(305) 946-1884
walwin@dereksmithlaw.com
*Attorneys for Plaintiffs,*

Dated:  10/2/19